UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
WORCESTER DIVISION

| | |
|---|---|
| PAUL LANDRY,   )<br>      Plaintiff   )<br>   )<br>v.   )<br>   )<br>AKAL SECURITY, INC. and   )<br>LORETTA LYNCH, Attorney   )<br>General of the United States,   )<br>      Defendants.   )<br>   ) | Civil Action No. 4:16-cv-40119 |

## COMPLAINT AND JURY DEMAND

Plaintiff Paul Landry, by his attorneys John Griffin, Jr., Katherine L. Butler, and Rebecca Pontikes, as and for his complaint against Akal Security, Inc. and Loretta Lynch, in her official capacity as Attorney General of the United States, alleges as follows:

NATURE OF THE ACTION

1.   If Paul Landry had been judged on the quality of his work, he would still be serving as a Court Security Officer protecting the public and the federal judiciary of the District of Massachusetts.  His work was recognized as excellent before he was dismissed. Although he performed his job as a Court Security Officer with distinction, he lost his job because of disability discrimination.

JURISDICTION AND VENUE

2.   This case is brought under the Americans with Disabilities Act (ADA), 42 U.S.C. ' 12101 et seq., and the Rehabilitation Act of 1973, 29 U.S.C. ' 791 et seq.  This Court has jurisdiction of this case according to 28 U.S.C. ' 1331 and 28 U.S.C. ' 1343.  This action is not related to any other case filed in this court.

3. The plaintiff has exhausted his administrative remedies and complied with statutory prerequisites by timely filing a charge of discrimination with the EEOC to challenge the disability discrimination he suffered by Defendant Akal Security, Inc. ("Akal"). He has requested a right to sue from the Equal Employment Opportunity Commission on his charge of discrimination against Akal and such right to sue letter has been issued. Plaintiff timely files this lawsuit to vindicate his rights.

4. Plaintiff timely initiated EEO counseling and filed a charge of discrimination to challenge the disability discrimination he suffered from defendant Loretta Lynch via the United States Marshals Service ("USMS"). More than 180 days have passed since he filed a formal complaint of discrimination. Plaintiff timely files this lawsuit to vindicate his rights.

5. Mr. Landry was working in the Federal Court building in Worcester, Massachusetts, and would have continued to work there if he had not been wrongfully terminated. Venue is invoked pursuant to 28 U.S.C. § 1391.

## PARTIES

6. The plaintiff Paul Landry is an adult resident of Worcester County, Massachusetts.

7. The defendant Akal Security, Inc. is a New Mexico corporation doing business in Massachusetts, and may be served with process by serving its registered agent, C T Corporation System, 155 Federal Street, Ste. 700, Boston, MA 02110.

8. The defendant Loretta Lynch is the United States Attorney General and may be served with process at her business address, Office of the Attorney General, Department of Justice, 950 Pennsylvania Ave., N.W., Washington, D.C. 20530-0001. A copy of this complaint is also served on the United States Attorney for the District of Massachusetts.

## STATEMENT OF FACTS

9. Paul Landry is well qualified to protect the federal judiciary. He began his law enforcement career in 1970, working for the Northborough, Massachusetts police department as a part-time student officer while he pursued his bachelor's degree in Criminal Justice from Northeastern University. He received his degree in 1973. He passed the state police exam and was accepted to the state police academy in 1974. In his ten years with the Massachusetts State Police, Mr. Landry was highly decorated. In particular, he was decorated by the Massachusetts governor for his actions in the shootout and arrest of domestic terrorists in 1982. He was further decorated in 1983 for his role in solving the Robin Benedict murder. He received an honorable discharge from the Massachusetts State Police in 1983.

10. After retiring from the State Police force in 1983, Mr. Landry worked as the Security Administrator for the Commerce Bank and Trust Company for several years.

11. In 1989, Mr. Landry was approached by the U.S. Marshal for Boston and asked to work as a Site Supervisor for the U.S. Marshals Service Court Security Officer ("CSO") program. Mr. Landry worked in various CSO capacities for the next 26 years, until 2015. Various security contractors held the First Circuit contract for CSO services throughout Mr. Landry's career. When Akal Security took over the contract in 2012, Mr. Landry became an Akal employee. In 2012, just as when Landry started in 1989, Akal and the USMS were eager to employ such a well-respected local law enforcement officer.

12. Akal contracts with the USMS to provide court security officers at many federal courthouses, including the federal courthouse in Worcester, Massachusetts during the time period at issue.

13. Mr. Landry was first hired as a CSO Site Supervisor on July 26, 1989. Mr. Landry worked as a CSO until he was terminated on June 24, 2015.

14. Throughout his 26 years as a CSO, Mr. Landry was required to undergo an annual physical in connection with his job. Mr. Landry complied with this requirement every year. He took the physical and the examining physician found him fit for duty as a CSO each year of his employment.

15. Pursuant to Akal's contract with the USMS, Akal allows the USMS to evaluate CSO medical documentation and decide when CSOs employed by Akal will be terminated based on that documentation.

16. Throughout his 26 years as a CSO, there was never any issue regarding Mr. Landry's qualifications for the job. Mr. Landry's work performance always demonstrated his ability to perform the essential functions of the job.

17. Mr. Landry's last annual physical occurred on August 14, 2014 at a facility approved by Akal. The results of the physical were normal and confirmed that Mr. Landry was healthy and able to perform all the essential functions of the CSO position.

18. Despite Mr. Landry's decades-long record of success as a CSO and the normal results from his August 2014 physical, the physician who reviewed those results for Defendants decided not to certify Mr. Landry as fit for duty. Instead, in November of 2014, the USMS and Akal notified Mr. Landry that he was required to provide additional information regarding his sleep apnea.

19. Mr. Landry was diagnosed with obstructive sleep apnea in June of 2006. His treating physician recommended that he use a continuous positive airway pressure ("CPAP")

4

machine while sleeping. Mr. Landry complied with the treatment and has used his CPAP machine every night since. As a result, he has been totally asymptomatic since he began using the CPAP machine in June 2006. There has never been a suggestion that Mr. Landry experienced drowsiness or other symptoms while at work.

20. Mr. Landry promptly informed his employers of his sleep apnea diagnosis and treatment, and the condition was noted in each of his annual physicals from then on. Since his sleep apnea had no effect on his job, he was medically cleared for duty at the time of his diagnosis. There was no change in Mr. Landry's condition, and there was no suggestion that his sleep apnea might be disqualifying at any time until the 2014 medical review.

21. The physician who performed Mr. Landry's 2014 physical stated that Landry had a past diagnosis of sleep apnea, but that there were no current symptoms—the same findings noted in his physicals since the 2006 diagnosis. The examining physician confirmed that Landry was fully able to perform his job as a CSO.

22. However, when these results were given to Defendants' reviewing physician, he chose not to clear Mr. Landry for duty. Instead, on November 7, 2014, Defendants demanded that the plaintiff prove his compliance with his sleep apnea treatment by providing a full year's worth of compliance data downloaded from his CPAP machine.

23. The plaintiff would have complied with this demand, but for one thing: compliance was impossible because the data *did not exist*. Unlike newer models, Mr. Landry's CPAP machine did not have the capability of storing this data.

24. In response to Defendants' demand, Mr. Landry provided a note from his doctor explaining that the information requested did not exist. Dr. Frederick Curley, a sleep specialist,

found Landry to score a 0 (asymptomatic) on the Epworth sleepiness scale.   Dr. Curley confirmed for Defendants that since Mr. Landry was asymptomatic, that meant that his sleep apnea was well controlled.   Dr. Curley also confirmed that Landry's CPAP machine was too old to have a "compliance chip" that would provide the requested data, but that the machine was regularly maintained and functioning well.   Finally, Mr. Landry provided Defendants with the original physician letter from 2007 confirming that he was fully compliant with his sleep apnea treatment and had no symptoms.

25. The information Plaintiff provided should have ended Defendants' inquiry into his sleep apnea, since it confirmed that Landry's sleep apnea did not affect his ability to work as a CSO.   Instead, on January 28, 2015, Defendants not only reiterated their demand for downloaded compliance data, they took the unprecedented step of demanding that Mr. Landry *change his treatment* in order to provide it.   Defendants stated that "CPAP machine is old and needs to be replaced in order to report CPAP compliance.   In order to be medically qualified during the current and all future examinations, the examinee must provide objective verification of compliance with recommended treatment by utilizing a downloadable CPAP machine."

26. In other words, even though every physician who actually examined Mr. Landry had confirmed that his CPAP machine was functioning properly and was totally successful in treating his sleep apnea, Defendants claimed this was not good enough.   Instead, they demanded that Landry change his treatment by changing CPAP machines, just so that they could review downloadable compliance data.

27. Once again, the plaintiff attempted to satisfy Defendants' demands.   Though his machine did not store compliance information, he provided Defendants with a signed and notarized

log showing 30-days of use of his CPAP machine. He provided a certification from the CPAP seller showing that the machine was still under warranty, regularly maintained and working properly, and calibrated to the physician-prescribed settings. He also informed Defendants that Dr. Curley would not prescribe a different CPAP machine, because there was no medical reason for him to change his treatment, nor would his insurance cover a new machine. Finally, he again reminded Defendants that he had never had any issue performing his job because of his sleep apnea.

28.   On April 27, 2015, Defendants' reviewing physician rejected Plaintiff's CPAP usage log and certification without comment. They gave no explanation for why they wanted to pry into Plaintiff's bedroom and surveil his sleep directly, rather than simply accepting the logs he provided and the findings of every examining physician. Mr. Landry was a decorated career law enforcement officer who had passed background checks and worked as a CSO for decades. Defendants trusted Mr. Landry implicitly to defend the federal judicary, yet they branded him and his doctors as untrustworthy when it came to reporting his CPAP use and medical condition. Defendants simply reiterated their demand for downloaded data without any basis or rationale.

29.   Plaintiff made a third effort to persuade Defendants. The downloaded data Defendants requested did not exist and had never existed, but Mr. Landry resubmitted his physician statements, his handwritten usage log, and his CPAP machine certification in a final attempt to avoid being fired.

30.   In a conclusion as predictable as it was cruel, on June 19, 2015, Defendants' reviewing physician issued his final statement. He recited his standard for sleep apnea treatment—four hours per sleep session on at least 70% of sleep sessions—a standard that

Plaintiff's documentation showed he easily exceeded. Defendants' doctor recited that law enforcement officers who used CPAP for sleep apnea "should be monitored for consistent use and therapeutic efficacy"—precisely what every physician who had examined Plaintiff had already confirmed. Finally, Defendants' doctor recited that CPAP data should be reviewed "as part of an intervention triggered by early warning signs" even though Plaintiff had *zero* warning signs and was totally asymptomatic. Defendants did not care that every shred of medical evidence showed Plaintiff to be qualified. Rather, they wanted something that didn't exist, downloaded CPAP data, and refused to consider anything else. Since Plaintiff could not comply, Defendants fired him.

31. On June 22, 2015, Defendant USMS informed Defendant Akal that Mr. Landry was medically disqualified from working as a CSO. Akal terminated him the next day.

32. The defendants disqualified and terminated the plaintiff even though they knew that every physician who had examined him had found him to be fully compliant with CPAP treatment and free of any symptoms of sleep apnea. Defendants disqualified and terminated the plaintiff even though they knew that his condition had never affected his work, and that he did not have daytime drowsiness or any other symptoms.

33. Although the USMS requested that Akal inform it of any questions or concerns regarding Mr. Landry's disqualification, Akal did not do so. Akal said nothing even though it knew that there was no basis for the disqualification and Mr. Landry was fully qualified to work as a CSO.

34. Even though Defendants knew that Mr. Landry was eminently qualified to work as a CSO, they subjected him to illegal screening requirements and made illegal demands for medical examinations in violation of the Rehabilitation Act, 29 U.S.C. ' 791 et seq., and the ADA, 42

U.S.C. ' 12112(b)(3), (b)(6), and (d)(4)(A).  The demand for downloaded CPAP data was neither job-related nor consistent with business necessity.  Defendants knew that Plaintiff objected to their demands, but refused to withdraw or modify their demands or to engage in any interactive process with Plaintiff to determine whether some other accommodation might be possible.

35.    Though Akal subjected Mr. Landry to this discrimination pursuant to its contractual arrangement with the USMS, Akal was Mr. Landry's employer and the responsibility for the discrimination falls on both defendants.  See 42 U.S.C. ' 12112(b)(2).  Defendants then fired Mr. Landry based on their perception of his sleep apnea and his inability to comply with their illegal demands for nonexistant information.  This firing violated their own policies, the Rehabilitation Act, 29 U.S.C. ' 791 et seq., and the ADA, 42 U.S.C. ' 12112(a).  These illegal acts caused Mr. Landry's damages, including lost wages and benefits and mental anguish.

COUNT I B The Americans with Disabilities Act

36.    The plaintiff is a qualified individual with a disability.  The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability or the perception of a disability, sleep apnea, in violation of 42 U.S.C. ' 12112(b)(3), (b)(6), and (d)(4)(A).  He was then fired because of his disability or the perception of a disability, in violation of 42 U.S.C. ' 12112(a).  He has an actual disability as he was assessed by Akal.  He was regarded as having a disability, based on Akal's perception that he was substantially limited in his ability to breathe while sleeping and to stay awake at work.  He was discharged because of a record of a disability, and without any interactive accommodation process.  Akal's conduct violates the Americans with Disabilities Act, which prohibits discrimination in employment on the basis of disability.  Nor can Akal contract out of

its obligations under the ADA by allowing the USMS to subject its employees to discrimination under the ADA. 42 U.S.C. ' 12112(b)(2). The plaintiff is a qualified individual with a disability, he was regarded as having a disability, and he was discriminated against because of his disability, causing his damages.

COUNT II B The Rehabilitation Act

37. The plaintiff is a qualified individual with a disability. The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a disability or the perception of a disability, sleep apnea, in violation of 29 U.S.C. ' 791 et seq. He was then fired because of his disability or the perception of a disability, in violation of 29 U.S.C. ' 791 et seq. He has an actual disability as he was assessed by the USMS. He was regarded as having a disability, based on the USMS's perception that he was substantially limited in his ability to breathe while sleeping and to stay awake at work. He was discharged because of a record of a disability, and without any interactive accommodation process. The USMS's conduct violates the Rehabilitation Act of 1973, which prohibits discrimination in employment on the basis of disability. The plaintiff is a qualified individual with a disability, he was regarded as having a disability, and he was discriminated against because of his disability, causing his damages.

COUNT III B Massachusetts General Laws Chapter 151B

38. The plaintiff is a qualified handicapped person. The plaintiff performed his job as a Court Security Officer with distinction, but was subjected to illegal screening requirements and medical examinations because of a handicap/disability or the perception of a disability, sleep apnea, in violation of M.G.L. ch. 151B §4. He was then fired because of his disability or the

perception of a disability, in violation of M.G.L. ch. 151B §4.  He has an actual disability as he was assessed by Akal.  He was regarded as having a handicap/disability, based on Akal's perception that he was substantially limited in his ability to breathe while sleeping and to stay awake at work.  He was discharged because of a record of a disability, and without any interactive accommodation process.  Akal's conduct violates Massachusetts law, which prohibits discrimination in employment on the basis of disability.  Nor can Akal contract out of its obligations under the law by allowing the USMS to subject its employees to discrimination.  M.G.L. ch. 151B §4.16.  The plaintiff is a qualified individual with a disability, he was regarded as having a disability, and he was discriminated against because of his disability, causing his damages.

## DAMAGES

39.     The damages suffered by the plaintiff include lost wages and benefits as well as compensatory damages for the injuries suffered at the hands of the defendants, including, but not limited to, mental anguish.

40.     Further, because Akal's actions were of the sort that render the imposition of punitive damages appropriate, the plaintiff is entitled to an award of these damages, which he seeks.

## RELIEF REQUESTED

WHEREFORE, the plaintiff asks this court to enter a judgment:

a. Declaring that the acts and practices complained of in this Complaint are in violation of the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Massachusetts General Laws;

    b.   Enjoining and permanently restraining these violations of law;

    c.   Directing the defendants to pay the plaintiff actual and compensatory damages that he suffered, past and future;

    d.   Directing the defendants to reinstate plaintiff, or in the alternative, award him front pay;

    e.   Directing Akal to pay the plaintiff punitive damages for its conduct in an amount as yet to be ascertained;

    f.   Awarding the plaintiff pre-judgment interest on the amounts owed at the maximum rate allowed by law;

    g.   Awarding the plaintiff the costs of this action, together with reasonable attorneys' fees and expert witness fees;

    h.   Awarding the plaintiff post-judgment interest on the amount of judgment until paid at the maximum rate allowed by law; and

    i.   Awarding the plaintiff such other relief, legal or equitable, as may be warranted.

## JURY DEMAND

Plaintiff demands a jury trial and tenders the appropriate fee.

          Respectfully submitted
          PAUL LANDRY,
          By his attorneys,

          *Local Counsel for Plaintiff,*

          _____
          Rebecca G. Pontikes
          BBO # 637157

Dated:   August 31, 2016

Bryn Sfetsios
BBO #688368
PONTIKES LAW LLC
10 Tremont Street, Second Floor
Boston, MA 02108
(617) 357-1888
rpontikes@pontikeslawllc.com

**John Griffin, Jr.**
Federal I.D. No. 2238
State Bar No. 08460300
**Michael J. Neuerburg**
State Bar No. 24075562
MAREK, GRIFFIN & KNAUPP
203 North Liberty Street
Victoria, Texas 77901
(361) 573-5500
Fax: (361) 573-5040
jwg@lawmgk.com
mjn@lawmgk.com

**Katherine L. Butler**
Federal I.D. No. 4734
State Bar No. 03526300
BUTLER & HARRIS
1007 Heights Boulevard
Houston, Texas 77008
(713) 526-5677
Fax: (888) 370-5038
kathy@butlerharris.com